## J. H. TURLINGTON v. A. W. AMAN.

(Filed 19 November, 1913.)

1. **Arrest and Bail—Execution Against the Person—Unsatisfied Execution—Motions—Procedure—Statutes.**

   Where a personal execution against a debtor is allowed by the statute, it must be by motion before the clerk after a return of the execution, against his property, unsatisfied, and from any adverse ruling his decision is subject to review on appeal to the Superior Court (Revisal, sec. 625) ; and if a judgment in the Superior Court may permit an execution against the person of the debtor, should the execution against this property thereafter be returned unsatisfied, the court is not required to order in the judgment that execution issue against the person of the debtor in anticipation of such a return on the execution.

2. **Arrest and Bail—Pleadings—Execution Against the Person—Cause of Arrest—Statutes.**

   Where the complaint alleges a cause of arrest, whether the same be necessary to the cause of action or not, an execution against the person of the debtor may issue upon a finding of the cause, under chapter 541, Laws 1891 (now Revisal, sec. 625), after an unsatisfied execution under a judgment against his property has been returned. *Ledford v. Emerson*, 143 N. C., 527, cited and applied.

3. **Arrest and Bail—Cause of Arrest—Verdict—Judgment—Statutes.**

> In order to issue an execution against the person of the defendant in cases where it is permissible, the cause of arrest must be pleaded and proved, the issue affirmatively determined by the jury and judgment rendered. Revisal, sec. 625.

4. **Arrest and Bail—Public Officers—Sheriffs—Misappropriation of Funds—Statutes—Sureties—Subrogation—Parties.**

> A sheriff, who is a public officer, may be held in arrest and bail when he has embezzled or fraudulently misappropriated money or property which, as such officer, he has received, or when he has been guilty if misconduct or neglect in office. Revisal, sec. 727. The right of subrogation of the surety on his bond, under the circumstances of this case, and the question, as to whether the cosureties were necessary parties, discussed by WALKER, J.

APPEAL by plaintiffs from *O. H. Allen, J.,* at August Term, 1913, of SAMPSON.

This is a motion for execution against the person of the defendant, based on the following facts: A. W. Aman was sheriff of Sampson County in 1901, 1903, and 1905, and he was also, by virtue of his office, the treasurer of the county. He gave bond for the performance of his official duties, the collection of State and county taxes among them, with plaintiff and others as his sureties. In January, 1907, having defaulted, he executed a deed of assignment for the benefit of his creditors, and fled from the State. In the assignment he preferred the sureties on his official bond; and then provided for the payment of his general creditors, who, in the month of January, 1907, about five days after the execution and registration of the assignment, filed a petition in the proper United States court to declare him a bankrupt, alleging therein the assignment with its preferences as an act of bankruptcy. The creditors, as a measure of prudence preventing the setting aside of the assignment and saving the property so conveyed for the benefit of themselves and the other creditors, entered into a compromise with the creditors who filed the petition, under the provisions of which the latter were paid off with the proceeds of the property in the hands of the assignee, leaving a balance of $22,000 unpaid, and of this amount plaintiff had to pay $469.22. Plaintiff claims that, as

TURLINGTON *v.* AMAN.

the State and county taxes were paid by the sureties, his share being the amount just stated, he is substituted exactly and fully to the rights and remedies of the creditors and entitled to a personal execution against defendant, which was one of their remedies, while defendant insists that as the plaintiff and his cosureties gave up their priority under the assignment by the compromise, which was made with their consent, and as they would have been fully indemnified but for such action on their part, they have waived their right to such an execution. Plaintiff replies that if the compromise had not been made, the property would have been sacrificed or they would have been subjected to considerable loss in selling the insolvent estate, and, besides, that the filing of the petition and the adjudication of bankruptcy annulled the assignment, and if not, that it would have been set aside or declared void by the court under the bankruptcy act, the petition having been filed within a few days after the date of the assignment. Defendant admitted the debt.

Issues were submitted to the jury, and answered as follows:

1. Did the defendant, A. W. Aman, as sheriff and tax collector and treasurer *ex officio* of said county of Sampson, make default as such officer, and did he fraudulently convert the public tax money to his own personal account and misapply the same? Answer: Yes.

2. Was the plaintiff a surety on said bond, and what amount was he compelled to pay by reason of the fraudulent conduct of the defendant? Answer: $469.62 and interest from 18 March, 1907.

3. Did the plaintiff and other sureties of A. W. Aman direct F. R. Cooper, assignee of said Aman, to pay off the store creditors of said Aman out of the order of preference named in the deed of assignment? Answer: Yes.

4. What amount of money was paid to said store creditors by said assignee under the direction of the plaintiff and other sureties? Answer: $5,000.

5. Did plaintiff and the other sureties of A. W. Aman direct Cooper, assignee, to pay off the store accounts of A. W. Aman to prevent A. W. Aman from being thrown into bankruptcy and said deed of assignment from being set aside? Answer: Yes.

Plaintiff, in due time, objected to the third and fourth issues, as irrelevant to the case. The court refused to sign the judgment tendered by the plaintiff, directing that in case the debt could not be levied out of the property, an execution against the person should be issued. Judgment having been entered without this clause, plaintiff excepted and appealed.

*Faison & Wright for plaintiff.*
*No counsel for defendant.*

WALKER, J., after stating the case: There are three kinds of executions; one which is issued against the property of the debtor, another against his person, and still another for the delivery of the possession of real or personal property, or for such delivery with damages, for unlawfully withholding the same. Revisal, sec. 616. An execution against the person of the debtor may be issued, after the return of an execution against his property unsatisfied, if the action be one in which the defendant might have been arrested. Section 625. Turning to the provisions in regard to arrest and bail, we find that a defendant may be arrested and held to bail when as a public officer he has received money or property and embezzled or fraudulently misapplied the same, or when he has been guilty of any misconduct or neglect in office. Revisal, sec. 727.

The complaint in this case alleges that defendant embezzled or fraudulently misapplied public funds which had come into his hands as sheriff of the county, which, of course, is also misconduct in office; and the jury, in response to the issues, have found the facts as alleged in the complaint, and the court, in its judgment, refers to these findings and expressly makes them a part thereof, and this is done with sufficient certainty and formality for the issuance of an execution, if the plaintiff otherwise is entitled thereto. But we do not think that, in any view, the request of the plaintiff should have been granted—at least as a matter of right; and this brings us to consider the nature of an execution against the person and when it should issue.

Our statute once provided that where the right to arrest is determined by the nature of the action, or, in other words, where facts stated in the complaint, and necessary to support the cause

of action, are such as to authorize an arrest, no order of arrest need be obtained before judgment in order to authorize an execution against the body, and, conversely, no execution against the person can issue upon a judgment where no order of arrest has been previously obtained in the action, unless the facts stated in the complaint necessarily import liability to arrest, and unless the cause of action and the cause of arrest are identical. If the grounds of arrest are extrinsic to the cause of action, and the cause of action is not one which of itself would entitle the plaintiff to a body execution, without a prior order of arrest having been granted, the fact that the complaint contains allegations which would entitle the plaintiff to an order of arrest will not authorize the issuance of such an execution. It is not necessary or proper to set forth such facts in the complaint, because they constitute no part of the cause of action and are not relevant or necessary to be proved. 8 Enc. of Pl. and Pr., p. 622.

But this has been somewhat changed by the act of 1891, ch. 541, so as to make it sufficient for the issuance of a personal execution that the complaint alleges a cause of arrest, "whether the same be necessary to the cause of action or not." Pell's Revisal, sec. 625.

The procedure in all such cases has been fully discussed and settled by us in *Ledford v. Emerson,* 143 N. C., 527, and we adhere to what is there said. That case is in perfect accord with *Peebles v. Foote,* 83 N. C., 102; *Huntley v. Hasty,* 132 N. C., 280, and *Kinney v. Laughenour,* 93 N. C., 326, when the facts of the several cases are considered, for they differ materially.

In the *Peebles case* the statement of the cause for the arrest was not an essential allegation of the principal cause of action, and the Court refused the writ because no order of arrest had been previously served, assigning the case to the second class of those in which such an execution can issue, upon the ground that the cause of arrest is collateral and extrinsic to the cause of action.

In the *Kinney case* the cause for arrest and the cause of action were identical (seduction of plaintiff's daughter), which was found by the jury, which finding passed into the judgment and was the basis of it.

The *Huntley case* is in the same category, the two causes being the same, assault and battery. The same may be said of *Carroll v. Montgomery,* 128 N. C., 278.

The question whether it was necessary that there should be an affirmative finding by the jury of the cause for the arrest upon an issue submitted to them was not, therefore, presented in those cases, as in three of them such fact was found, and in the *Peebles case* the Court held that plaintiff was not entitled to the execution, because there was no proper allegation in the complaint and no order of arrest had been served. We are satisfied with the reasons given in *Ledford's case* for requiring a finding by the jury of the cause for the arrest. It is evidently approved in *Stewart v. Bryan,* 121 N. C., at p. 50; in which the Court said: "It will not do to carry the doctrine of *Peebles v. Foote* under section 447 of The Code, as amended by the act of 1891, to the extent contended for in the argument of plaintiff— that, because there is an allegation in the complaint, this fact entitles the plaintiff to an execution against the body of the defendant, whether the plaintiff recovered a judgment against the defendant or not. To sustain this position would be in effect to nullify the Constitution." Of course, the judgment referred to is one based upon such a finding of fact, for no one would ever suppose that a plaintiff would be entitled to any kind of execution if he failed to recover in the action. We have discussed this matter, because it might be inferred (Pell's Revisal, sec. 625 and note) that the *Ledford* case was not altogether in harmony with the other cases, when, as we have seen, there is not the least conflict between them, but the other cases fully sustain *Ledford v. Emerson.* The following authorities sustain the same view: *Elwood v. Gardner,* 45 N. Y., 354, 355; *Smith v. Knapp,* 30 N. Y., 581. As to the general practice in such cases, 8 Enc. of Pl. and Pr., p. 622 *et seq.* We think that *McAden v. Banister,* 63 N. C., 478, is virtually to the same effect. It was there determined that the right to a body execution depended upon what appeared in the judgment. *Justice Rodman* (who was formerly one of the Code Commissioners) says in that case: "The execution must be based on what appears on his docket, and nothing

else. It may be asked, Was a copy of the affidavit and order of arrest a material part of the justice's judgment, and therefore required to be docketed with it? We are of opinion that, for the purpose of enabling him to issue a personal execution, they were; for this purpose they materially qualified the judgment, and gave it an effect it otherwise would not have. For the issuing of an execution against the lands of the defendant they are not material parts of the judgment, as for this purpose they neither added to nor impaired it."

But it is unnecessary to prolong the discussion of this subject. Assuming, for the sake of argument, that plaintiff is entitled to a personal execution, his motion that an order for it be inserted in the judgment was properly denied, as being premature. The statute prescribes that such an execution can be issued only after a return of an execution against the property unsatisfied in whole or in part. Revisal, sec. 625. The court could not anticipate such a juncture.

There is no finding that the defendant is insolvent. But the statute points out the remedy. It is by motion before the clerk, upon return of the unsatisfied execution, for process against the person. If he refuses it, in a proper case, plaintiff may appeal and have his decision reviewed and reversed. Such was the practice adopted and approved in *Kinney v. Laughenour, supra,* and *Huntley v. Hasty, supra.* 8 Enc. of Pl. and Pr., pp. 631, 633.

We express no opinion as to plaintiff's right to a personal execution, when properly applied for. · He contends that his cause of action is so closely and intimately connected with defendant's wrongful acts, for which he could be arrested, that they form really a part of its "warp and woof," and for that reason he is entitled to the process, citing in support of this view, Brandt on Suretyship and Guaranty, sec. 180, p. 259, and sec. 177. Again, it may be observed that plaintiff is but one of several sureties on the sheriff's bond, and the question is raised whether he can sue alone, and without them as joint plaintiffs, if he relies upon the equitable doctrine of subrogation. See 1 Brandt S. and G. (3 Ed.), sec. 317 and notes, especially note 19 and cases; *Hall v. Myers,* 90 Ga., 674; Sheldon on Subrogation, sec. 27. Must the entire indebtedness be paid and all of the

sureties join in one action against the sheriff? Another question is, whether the doctrine of subrogation applies to such a case at all, so as to invest the paying surety or sureties with all the creditor's rights and remedies, so that they may, as one of the remedies, arrest the defendant. Sheldon on Subrogation, secs. 86, 87 and 136; Brandt S. and G. (3 Ed.), sec. 317 and note, 324 and 328; *King v. Kirby,* 28 Barbour (N. Y.), 49. These and perhaps other questions may arise in the further progress of the case, but we will express no opinion upon them until they are thus reached, and we are required to do so. There was no error in the judgment, nor in the other rulings to which exception was taken.

No error.